James A. Saville, Jr.
Christopher M. Panagos
HILL RIVKINS & HAYDEN LLP
*Attorneys for Plaintiff*

45 Broadway, Suite 1500
New York, New York 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  | |
|---|---|
| PT JAWA TIRTAMARIN, | : |
| Plaintiff, | : Docket No.:  07-CV-6839 (HB) |
| vs. | : |
| PT PERTALAHAN ARNEBATARA NATUNA, | : |
| Defendant. | : |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT BY DEFAULT

Plaintiff, PT Jawa Tirtamarin ("PT Jawa") respectfully submits this Memorandum of Law in

support of its Motion for Default Judgment against Defendant PT Pertalahan Arnebatara Natuna (PT

PAN"). Plaintiff also submits this Memorandum of Law in support of application to this Court to

recognize and enforce the arbitration award issued by the Singapore International Arbitration Center

("SIAC") on July 13, 2007. Despite multiple notices of the instant action, proper service of the

Summons and Verified Complaint and acknowledgement, in fact, of personal service, Defendant has

failed and refused to appear, answer or otherwise move. Accordingly, Plaintiff respectfully submits that its motion for a default judgment should be granted and SIAC Award No. 18 should be recognized, enforced and confirmed as a judgment of this Court.

## FACTS

Plaintiff and Defendant entered into a time charter party contract, dated October 24, 2005, on the "SUPPLYTIME 89" Uniform Time Charter Party for Offshore Service Vessels form, for the use of the accommodation work barge AWB SARKU SAMUDERA ("the Vessel") at a daily hire rate of US $18,500 for a period of two months, extendable subject to further agreement . *See* Declaration of Christopher Michael Panagos, dated January 25, 2008, (hereinafter "Panagos Decl.") at ¶12; Ex. 1-1. Box 33 of the charter provides that the contract provides for "Singapore" law and arbitration and Clause 31(a) further provides: "The Charter Party shall be governed by Singapore law and any dispute arising out of this Charter shall be referred to arbitration in Singapore." Panagos Decl. ¶13, Ex. 1-1.

Disputes arose under the charter party and, in accordance with Clause 33, Plaintiff gave notice of arbitration before the Singapore International Arbitration Center ("SIAC") on May 11, 2006. SIAC appointed an arbitrator on August 18, 2006. Panagos Decl. Ex. 1-2.

As set forth in the award, Defendant was fully apprised of all SIAC proceeds and even retained Singapore counsel, who on behalf of Defendant "objected to the arbitration being carried out in Singapore due to an absence of connecting factors." However, at the same time Defendant

1

acknowledged that the charter party contained an agreement which subjected disputes arising thereunder to arbitration in Singapore. Panagos Decl. Ex. 1-2. Defendant defaulted in the arbitration and a 28 page reasoned award was issued against it on July 13, 2007, as SAIC Award No. 18 of 2007. *Id.* The award allowed the vast majority of claims and denied or denied in part certain claims. The award granted Plaintiff US $815,548.16 and Rp 26,015,100 and 6% interest thereon from May 11, 2006 as damages against Defendant. *Id.* The award also granted costs for the arbitrator's and SAIC's fees in the amount of S $24, 967.52, and granted Plaintiff its costs in the arbitration in the amount of S $16,000.00. *Id.* In total the decision awarded Plaintiff USD$905,103.73.

Plaintiff commenced this action on July 30, 2007, with the filing of a summons and Verified Complaint. Panagos Decl. ¶ 2. This Court's subject matter jurisdiction was predicated on 28 U.S.C. §1333, in that the underlying dispute involved a maritime claim, and 28 U.S.C. §1331, in that the action also arose under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Panagos Decl. ¶ 2. In addition to seeking the recognition and enforcement of a foreign arbitral award issued in favor of Plaintiff, Plaintiff also sought the issuance of Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B").

Pursuant to Plaintiff's petition, on July 30, 2007, this Honorable Court ordered the Clerk to issue Process of Maritime Attachment and Garnishment ("PMAG") directing the attachment of Defendant's property in the hands of garnishees up to the amount of $905,103.73. (Docket No. 5).

Panagos Decl. ¶ 3.  On August 9, 2007, Garnishee Citibank, having been duly served with the Process of Maritime Attachment and Garnishment restrained an Electronic Fund Transfer ("EFT") bearing funds on account of the Defendant in the amount of $85,000.00. Panagos Decl. ¶ 4; Ex. 2.

On August 10, 2007, Andrew Brown, an associate at Hill Rivkins & Hayden sent notice of this attachment to the Defendant at its business address in Jakarta, Indonesia via FedEx courier on August 10, 2007, along with copies of the Summons and Complaint, Order Directing Clerk to Issue Process, and Process of Maritime Attachment and Garnishment.  Panagos Decl. ¶ 5; Ex. 3.

On October 11, 2007, Garnishee Bank of New York Mellon, having been duly served with Process of Maritime Attachment and Garnishment restrained an EFT bearing funds on account of the Defendant in the amount of $1,090,515.00. Panagos Decl. ¶ 6; Ex. 4.  Since this amount plus the amount previously restrained by Garnishee Citibank exceeded the amount Plaintiff was entitled to under the PMAG, Plaintiff's counsel directed the Bank of New York to restrain only $820,103.73. Panagos Decl. ¶ 6. Consistent with S.D.N.Y. Local Admiralty Rule B.2, Plaintiff's counsel sent via email notice of this attachment to the Defendant's legal officer, Mr. Taufik Karmadi, on October 12, 2007.  Panagos Decl. ¶ 7; Ex. 5.

The Defendant was served with the Summons and Complaint via Federal Express courier issuing from the Clerk's Office on October 16, 2007, pursuant to Fed. R. Civ. P. 4(f)(2)(c)(ii). Panagos Decl. ¶ 8.  Defendant was also personal served via hand delivery on November 2, 2007, and acknowledged that it had, in fact, been served. Panagos Decl. ¶ 8; Exs. 5, 6, 7, 8-A.  Despite these

multiple notifications, Defendant has failed to properly appear, answer or otherwise move. Although

a purported representative of Defendant, Mr. Taufik Karmadi, wrote to Plaintiff's counsel and the

Court on several occasions, he was advised to retain counsel but chose not to do so.


Accordingly, the Clerk issued a Certificate of Entry of Default on December 6, 2007 (Docket

Entry 15), following submission of the Attorney Affidavit pursuant to Local Rule 52.1 (Docket Entry

14) and Letter Request for Entry of Default (Docket Entry 13).  Panagos Decl. ¶ 10; Ex. 9.


## ARGUMENT

### POINT I

**DEFENDANT HAS FAILED TO APPEAR, ANSWER OR OTHERWISE DEFEND AND, THEREFORE, PLAINTIFF IS ENTITLED TO A JUDGMENT BY DEFAULT**

When a party against whom affirmative relief is sought fails to answer or otherwise defend, it

is subject to judgment by default under Rule 55. *See* Fed. R. Civ. P. 55(a). Rule B(2) further

provides:

> Notice to Defendant. No Default shall be entered except upon proof- which may be by affidavit- that:
> (a) the complaint, summons and process of attachment or garnishment have been served on the defendant in a manner authorized by Rule 4;
> (b) the plaintiff or the garnishee mailed to the defendant the complaint, summons, and process of attachment or garnishment using any form of mail requiring a return receipt; or
> (c) the plaintiff or the garnishee tried diligently to give notice of the action to the defendant but could not do so.
> Fed. R. Civ. P. B(2).

Rule B(3)(b) provides that "The defendant shall serve an answer within 30 days after

process has been executed, whether by attachment of property or service on the garnishee."

4

As set forth above, two EFTs were attached in the hand of garnishees, one on August 9, 2007 at Citibank, and another on October 11, 2007 at Bank of New York Mellon. Panagos Decl. ¶¶ 4, 6. Both banks were served with the Summons and Complaint, and Process of Maritime Attachment and Garnishment with accompanying Order of the Court. In accordance with Local Admiralty Rule B.2, notice of the first attachment was sent to the Defendant at its business address in Jakarta, Indonesia via FedEx courier on August 10, 2007, along with copies of the Summons and Complaint, Order Directing Clerk to Issue Process, and Process of Maritime Attachment and Garnishment.[1] Panagos Decl. ¶ 5; Ex. 3. Notice of the second attachment was sent to the Defendant via email to its legal officer, Mr. Taufik Karmadi, on October 12, 2007. Panagos Decl. ¶ 7; Ex. 5.

In addition to the foregoing, Plaintiff arranged for the Clerk of Court to serve the Summons and Complaint, Process of Maritime Attachment and Garnishment and Order Directing Clerk to Issue Process by Fedex courier pursuant to Fed. R. Civ. P. 4(f)(2)(c)(ii). Such service issued on October 16, 2007 and was completed on October 22, 2007. Panagos Decl. ¶ 8; Exs. 6, 7. As an additional measure Plaintiff arranged for personal service of the pleadings upon Defendant, which was completed on November 2, 2007. Panagos Decl. ¶ 8; Ex. 8. On several occasions Defendant wrote directly to the Court, which confirms that it was receiving all pleadings and was fully aware of the proceedings. Defendant was duly served with process via two channels and the relevant time to answer following both manners of service expired without the Defendant submitting its answer.

---

[1] Local Admiralty Rule B(2) provides:
> In an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing, and may be given by telex, telegram, cable, fax or other verifiable electronic means.

5

Accordingly, the Clerk issued a Certificate of Entry of Default (Panagos Decl. ¶10; Ex. 9) on December 6, 2007. *See* Panagos Decl. ¶ 10. Plaintiff's application to the Clerk of Court was forwarded to Defendant via email On December 6, 2007, and confirmed received on December 7, 2007. Panagos Decl. ¶10; Ex. 9.

In view of the foregoing, there is no question that Defendant was properly served under Rule 4 and was given proper notice under Local Admiralty Rule B.2 yet failed and refused to appear, answer or otherwise defend the claim. Further, when contacted by Defendant's representative, the Defendant was specifically advised to retain New York and did not do so. Accordingly, Plaintiff respectfully submits that it is entitled to judgment by default.

## POINT II

### SIAC ARBITRATION AWARD NO. 18 IS ENTITLED TO RECOGNITION AND ENFORCEMENT UNDER THE NEW YORK CONVENTION

An arbitral award may be enforced under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") if it was "pronounced in accordance with foreign law or involv[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Spector v. Torenberg*, 852 F.Supp. 201, 205 (S.D.N.Y. 1994) (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983).[2] To obtain

---

[2]The New York Convention provides subject matter jurisdiction to this Court, pursuant to 28 U.S.C. § 1331, "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," and 9 U.S.C. § 203, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United

recognition of a foreign arbitral award, the party seeking recognition must submit: "(a) The duly authenticated original award or a duly certified copy thereof; (b) The original agreement referred to in article II or a duly certified copy thereof." As set froth below, SAIC Arbitration Award is entitled to recognition and enforcement under the New York Convention.

First, the award is enforceable under the Convention since the award was issued outside the United States between non-U.S. parties and, therefore, it is not consider as "domestic." *Ocean Warehousing B.V. v. Baron Metals and Alloys, Inc.*, 157 F.Supp.2d 245, 251 (S.D.N.Y. 2001).

Plaintiff has also submitted a duly certified copy of the arbitration award and agreement to arbitrate. Copies of both the arbitration award and the charter party agreement under which the agreement to arbitrate is set forth are attached as exhibits to the Verified Complaint. See *Bergesen*, 710 F.2d at 934 (enforcing award where award and arbitration agreement were both certified by member of arbitration panel); *Matter of Arbitration between Continental Grain Co. and Foremost Farms Inc.*, No. 97 Civ. 0848, 1998 WL 132805 (S.D.N.Y. 1998) (enforcing award where copy of award was certified by director of arbitration association and copy of arbitration agreement certified by petitioner's attorney as a true and correct copy); *Vamvaship Maritime Ltd. v. Shivnath Rai*

---

States…shall have original jurisdiction over such an action or proceeding regardless of the amount in controversy."

In addition to this Court having subject matter jurisdiction under the New York Convention, Plaintiff's underlying claims against Defendant arise from a classic maritime dispute under a charter party and fall within this court's admiralty jurisdiction pursuant to 28 U.S.C. §1333. See *North East Shipping Corp. v. Gov't of Pakistan*, 1974 AMC 904 (S.D.N.Y. 1974) ("a charter party is a maritime contract…[a]nd disputes arising from a charter party are within the admiralty jurisdiction of United States courts") (citing *Victory Transport Inc. v. Comisaria Geneal*, 336 F.2d 354, 364 (2d Cir. 1964), *cert. denied*, 381 U.S. 934 (1965)).

*Harnarain (India) Ltd.*, 2006 WL 1030227, 2006 A.M.C. 1169 (S.D.N.Y. 2006) (enforcing award where copy of award and copy of the charter party containing the arbitration agreement were attached as exhibits to affidavit of plaintiff's attorney). In conjunction with this memorandum, Plaintiff also submits the Certification of Thomas Y.P. Sim, Esq. a solicitor in Singapore who represented Plaintiff in the arbitration against Defendant before the Singapore International Arbitration Centre, which certifies a copy of the duly rendered arbitration award dated July 13, 2007. *See* Sim Certification at Panagos Decl. Ex. 10. Plaintiff submits that the formal requirements of the Convention are met and respectfully requests that the Court grant recognition and enforce the award.

Furthermore, venue is proper in the Southern District of New York according to the implementing statute of the New York Convention, 9 U.S.C. § 204, which provides: "an action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could have been brought…"

The provisions of the Federal Arbitration Act, including § 8 which preserves a maritime claimant's right to proceed with arrest, attachment and/or garnishment under Rules B and C, to the extent not in conflict, are also applicable to the enforcement of issued arbitration awards falling under the Convention as stated in 9 U.S.C. § 208: "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States." *See, Bergesen v. Joseph Muller Corp.*, 710 F.2d 928

8

(2d Cir. 1983) ("There is no reason to assume that Congress did not intend to provide overlapping coverage between the Convention and the Federal Arbitration Act"); *see also*, *Energy Transport, Ltd. v. M.V. San Sebastian*, 348 F.Supp.2d 186, 200 (S.D.N.Y. 2004) (discussing New York Convention and Inter-American Convention).

The pertinent provision of the Federal Arbitration Act provides: "If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings…" 9 U.S.C. § 8 ("Federal Arbitration Act").

Since Defendant's property was located in the hands of garnishees in New York and was duly attached pursuant to process issued under Rule B and pursuant to Plaintiff's verified complaint, and Defendant was not "present" in New York for purposes of defeating attachment under Rule B, venue is proper in this Court.

In sum, SIAC Award No. 18 issued in favor of plaintiff and against defendant is entitled to recognition and enforcement under the New York Convention.

## POINT III

### THE ATTACHED FUNDS ARE PROPERTY OF DEFENDANT

In *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, the leading case governing maritime attachment of electronic fund transfers, the Court of Appeals confirmed that "under the law of this

circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." 460 F.3d 434, 436 (2d Cir. 2006) (citing *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir.2002)).

The various decisions of the district court following Aqua Stoli have confirmed that an EFT is an attachable asset of both the originator and the beneficiary. *HBC Hamburg Bulk Carriers GmbH v. Proteinas y Oleicos S.A. de C.V.*, No, 2005 WL 1036127, at *4 (S.D.N.Y. 2005); *Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F.Supp.2d 399, 406 (S.D.N.Y. 2007) (upholding attachment against defendant who was originator of EFT); *Mediterranea Di Navigazione Spa v. International Petrochemical Group S.A.*, 2007 WL 1434985, *5 (S.D.N.Y. 2007) (upholding attachment where defendant was originator of EFT); *Dominion Bulk Int'l, S.A. v. Naviera Panoceanica, S.A .C.*, 2006 WL 3408799 (S.D.N.Y. 2006) (upholding attachment of EFT where defendant was intended beneficiary); *Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co.*, 2007 WL 1002265, at *4 (S.D.N.Y. 2007) (EFT is attachable asset of intended beneficiary); *But cf. Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 461 F.Supp.2d 222 (S.D.N.Y. 2006).

The Defendant PT PAN was the intended beneficiary of the first EFT attached in the hands of Garnishee Citibank on August 9, 2007, as evidenced by the communication from Citibank to Plaintiff's attorneys. Panagos Decl. Ex. 2. Defendant PT PAN was the originator of the second EFT attached on October 11, 2007, as evidenced by the wire transfer details provided by Garnishee Bank of New York Mellon's attorneys to Plaintiff's attorneys. Panagos Decl. Ex. 4. In view of the foregoing, there is no question that the attached funds are "property" of the Defendant within the meaning of Rule B.

10

## **CONCLUSION**

For the reasons set forth herein Plaintiff, PT Jawa Tirtamarin, respectfully submits that it is entitled to a judgment by default against the Defendant in the amount of $905,103.73 as prayed for in the Verified Complaint, and that SIAC Award No. 18 issued in favor of Plaintiff and against Defendant is entitled to recognition and enforcement.

Dated: New York, New York
       January 29, 2008

                                        Respectfully submitted,

                                        _James A. Saville, Jr._
                                        James A. Saville, Jr.
                                        Christopher M. Panagos
                                        HILL RIVKINS & HAYDEN LLP
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 1500
                                        New York, New York 10006
                                        Tel: (212) 669-0600
                                        Fax: (212) 669-0699